J-A21029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL'S LA VERANDA, INC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RIVERSTONE RIVERFRONT, INC | : | |
| | : | |
| Appellant | : | No. 2217 EDA 2020 |

Appeal from the Order Entered October 20, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 200601545

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.*

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 4, 2022**

Appellant Riverstone Riverfront, Inc. appeals from the order denying its petition to open the confessed judgment entered in favor of Appellee Michael's La Veranda, Inc.  Appellant claims that it raised a meritorious defense based on fraudulent nondisclosure.  We affirm.

On December 16, 2019, Appellant and Appellee entered into an agreement of sub-sublease for a property on which Appellee operated a restaurant (premises).   Agreement of Sub-Sublease, 12/16/19, at 1 (hereinafter 2019 sub-sublease).[1]  The 2019 sub-sublease contained remedies

_____

* Former Justice specially assigned to the Superior Court.

[1] Prior to the 2019 sub-sublease at issue in this appeal, Headhouse Associates and La Veranda Co. entered into the November 19, 1996 sublease (1996 sublease) of the premises for the operation of a restaurant.  It appears that La Veranda Co. assigned its interest under the 1996 sublease agreement to
*(Footnote Continued Next Page)*

provisions that permitted Appellee to enter a confessed judgment if Appellant defaulted on its obligations, including the payment of rent.

After discovering alleged zoning, licensing, and code violations, Appellant commenced a separate action against Appellee and its individual owner.  In the separate action, Appellant filed an amended complaint on May 12, 2020, in which Appellant raised claims of breach of contract/quasi-contract and fraud in the inducement, among other counts.

In the instant matter, Appellee filed a complaint in confession of judgment on June 25, 2020.  On July 27, 2020, Appellant filed its petition to strike and/or open confession of judgment, to stay execution, and to consolidate.  Therein, Appellant asserted:

> 5. [Appellee's owner], on behalf of [Appellee], represented that the premises was zoned and licensed to legally operate a two floor restaurant with live entertainment space and did not have existing code violations.
>
> 6. [Appellee] represented that La Veranda [the existing restaurant at the premises] was operating legally with no code violations and with the proper licenses and zoning to operate both floors of the premises as part of the restaurant with live entertainment space.
>
> 7. [Appellee] represented that the second floor and first floor banquet [areas] were used for parties and large events, and not for regular dining but that it could be used for regular dining due [sic] based on their set up and separate bar areas as there were no outstanding code violations or zoning or license issues.

---

Appellee.  2019 Sub-Sublease, 12/16/19, at 1.  As noted below, Appellee attached copies of both the 2019 sub-sublease and the 1996 sublease to its complaint in confession of judgment.  However, neither Appellant nor Appellee argued that the 1996 sublease contained provisions relevant to the entry of the confessed judgment or Appellant's petition to open.

8. During the tour [Appellant's] representative asked [Appellee's owner] what the legal occupancy was for all three areas.

9. [Appellee's owner] stated that the lawful occupancy for the banquet room was 110 people, the lawful occupancy for the main dining area was 145 people and lawful occupancy for the second floor was 100 people.

10. At no time prior to entering the Sub Sublease Agreement did [Appellee] disclose that the restaurant was operating illegally due to code violations or against what the premises had been zoned for.[2]

11. [Appellant] signed a sub-sublease for the premises, which was fraudulently misrepresented by [Appellee], and [Appellant] paid for the transfer of the liquor license.

12. After relying upon the fraudulent misrepresentations of [Appellee], it was discovered that the restaurant was operating illegally and operated with the following severe code violations and lacked the following licenses, permits and/or zoning:

a) No food license;

b) No Special Assembly and Occupancy License

c) No Lawful Occupancy License for the banquet area on the first floor;

d) No Lawful Occupancy License for the second floor;

e) No zoning for the banquet area;

f) No zoning for the second floor;

_____

[2] We note that Appellee argues that Appellant waived its appellate arguments based on fraudulent nondisclosure by failing to raise it in the petition to open the confessed judgment. *See* Appellee's Brief at 9-13. However, as indicated above, Appellant alleged Appellees' failures to disclose in the petition. Additionally, Appellant alleged Appellee's failures to disclose in its memorandum of law accompanying the petition and in the amended complaint from Appellant's separate action against Appellant, which Appellant also attached to the petition. These allegations were adequate to preserve the issue, and we decline to find waiver.

g) Faulty electrical work;

h) Outdated and inoperable fire sprinkler system

i) No permits for work performed in the restaurant for several years.  Exhibit A.

13. Following the signing of the lease [Appellant] requested a copy of the certificate of occupancy for all three room[s] from [Appellee].

14. [Appellee] could only provide a copy of the certificate of occupancy for the first floor.  Exhibit B

15. Upon discovering the extensive violations [Appellant's] attorney contacted [Appellee's] attorney regarding the extensive issues with the property.  Exhibit C

16. Arguably, the sub-sublease is void or voidable due to doctrine of impossibility of performance and/or frustration of purpose since the restaurant was not operating legally.

17. In the alternative, if the contract is not void or voidable, [Appellee] breached the contract and/or committed fraud.

18. On or about March 31, 2020, [Appellant] filed a complaint against [Appellee and its owner] under docket #200302732. Exhibit D

19. On or about May 12, 2020, [Appellant] filed an Amended Complaint.  Exhibit E

Pet. to Strike and/or Open Confession of J., to Stay Execution, and to Consolidate, 7/27/20, at 2-4 (unpaginated) (some formatting altered) (hereinafter, Pet. to Open).  The allegations in Appellant's petition to open the confessed judgment mirrored the amended complaint in Appellant's separate action against Appellee.

Appellee filed a response opposing Appellant's petition and asserted, in relevant part, that the 2019 sub-sublease between the parties contained an "as-is" provision in addition to an integration provision that barred evidence

of the representations made before the execution of the parties' agreement. Resp. in Opp'n to Pet. to Open, 9/9/20, at 2 (unpaginated). Specifically, Appellee relied on the following provisions set forth in the 2019 sub-sublease:

6. CONDITION OF PREMISES: NO REPRESENTATIONS

Sublessee [Appellant] has examined the Premises prior to and as a condition precedent to the execution hereof, and its execution of this Sub-sublease is conclusive evidence of Sublessee's acceptance of the Premises in their "AS IS" condition, including all latent conditions thereof. Sublessor [Appellee] has no obligation to alter, repair, decorate or further improve the Premises, and any alteration, repairs, or modification necessary for Sublessee to use the Premises shall be made at the sole cost and expense of Sublessee excepting those alterations, repairs or modifications which are the obligation of Landlord under the Sublease,[3] if any, the cost and expense of which shall be the responsibility solely of Landlord. Sublessee acknowledges and agrees that except as expressly set forth in the AOS,[4] that neither Sublessor, its agents or representatives have made any representation as to: (i) the physical condition, repair, profitability of operation or possible uses of this Premises, (ii) the laws, governmental regulations and insurance underwriting standards and requirements applicable to the Premises or (iii) the compliance by the Premises with such laws, regulations and requirements and with the terms of the Sublease.

\* \* \*

20. MISCELLANEOUS

---

[3] The 2019 sub-sublease designated Headhouse Associates as "Landlord." 2019 Sub-Sublease at 1.

[4] Appellee asserts that "AOS" refers to an agreement of sale that "[t]he parties had initially contemplated [but] never executed." Appellee's Brief at 5 n.1. Appellee states that the reference to the agreement of sale "was erroneously not omitted from the final draft of the [2019] Sub-Sublease." *Id.* Appellant did not dispute Appellee's explanation in the trial court, nor does Appellant raise an argument based on the reference to the AOS in the instant appeal.

* * *

    d. <u>Entire Agreement</u>. This Sub-sublease contains the entire agreement between the parties hereto concerning the Premises, and shall not be modified in any manner except by a writing signed by Sublessor and Sublessee.

2019 Sub-Sublease, 12/16/19, at 5, 14.

On October 20, 2020, the trial court denied Appellant's petition to open the confession of judgment. Order & Op., 10/20/20, at 1. In its accompanying opinion, the trial court noted that "upon the filing of a petition to open confession of judgment, '[t]he petitioning party bears the burden of producing sufficient evidence to substantiate it[s] alleged defenses.'" *Id.* at 4 & n.11 (citing *Haggerty v. Fetner*, 481 A.2d 641, 644 (Pa. Super. 1984)). The trial court denied Appellant's petition to open the confessed judgment, concluding that the as-is and integration provisions of the parties' agreement barred Appellant from offering evidence of "fraud and/or misrepresentation." *Id.* at 5. The trial court's order and opinion, however, quoted from the sublease "to which [Appellant] was not a party" and that was "unrelated to the resolution of this action." Trial Ct. Op., 4/9/21, at 2 (unpaginated).

On November 17, 2020, Appellant timely filed a notice of appeal and a motion for reconsideration.[5] The trial court did not order a Pa.R.A.P. 1925(b) statement.

---

[5] The trial court did not expressly rule on Appellant's motion for reconsideration, but this fact does not affect this Court's jurisdiction. It is well settled that a reconsideration motion does not toll the time for taking an appeal unless the trial court grants the motion within thirty days of the order
*(Footnote Continued Next Page)*

Meanwhile, in Appellant's separate action against Appellee, the trial court sustained in part and overruled in part Appellee's preliminary objections on November 20, 2020. The trial court cited, in part, **Youndt v. First Nat. Bank of Port Allegany**, 868 A.2d 539 (Pa. Super. 2005), a decision in which this Court applied the "clear and free from doubt" standard for sustaining preliminary objections that result in the dismissal of an action. **See Youndt**, 868 A.2d at 544 (noting that "it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred" and that "[a]ny doubt should be resolved by a refusal to sustain the [preliminary] objections" (citation omitted)). Notably, in overruling one of Appellee's preliminary objections, the trial court explained that "[p]ursuant to the theory of fraudulent nondisclosure, the allegations in the amended complaint are specific enough to state a cause for fraud." Order, No. 200302732, 11/20/20, at 2 & n.4. The trial court added: "The as-is clause in the Agreement of Sub-Sublease may be subject to different interpretations. Therefore, the claims based on fraudulent nondisclosure are not dismissed." **Id.** at 1 n.1.

In the instant appeal, the trial court filed an opinion on April 9, 2021. The trial court noted that its October 20, 2020 order and opinion denying Appellant's petition to open the confessed judgment quoted provisions of the

being appealed. **See** Pa.R.A.P. 1701(b)(3); **Stephens v. Messick**, 799 A.2d 793, 800-01 (Pa. Super. 2002). "Normally, motions for reconsideration expire on their own after the thirty day period" absent a trial court's express ruling granting reconsideration or vacating the order. **See Stephens**, 799 A.2d at 801.

unrelated 1996 sublease rather than the parties' 2019 sub-sublease. Trial Ct. Op., 4/9/21, at 2 & n.2. The trial court indicated that it would recommend the affirmance of its order after correcting its quotations to include references to the 2019 sub-sublease.[6] *Id.*

Appellant presents the following questions for our review:

1. Did [the trial court] abuse [its] discretion when [it] concluded Appellant's fraudulent nondisclosure claim against Appellee was not a meritorious defense in the confession of judgment case but was a legally sufficient cause of action in the [the separate] fraud case [by Appellant against Appellee]?

2. Can the Superior Court judicially estop a trial court from entering two inconsistent orders in two related cases where the parties and facts are the same and the legal standard governing both rulings is the same?

Appellant's Brief at 3 (formatting altered).

In its first issue, Appellant contends that it presented a meritorious defense to open the confessed judgment. In support, Appellant relies on

_____

[6] Because the trial court inadvertently quoted the 1996 sublease, it did not consider the language of the 2019 sub-sublease in either its October 20, 2020 order and opinion or its April 9, 2021 opinion. We appreciate the trial court's candor and request for a remand. However, neither Appellant nor Appellee seek a remand for a correction of the October 20, 2020 order and opinion.

We emphasize that the parties' appellate arguments focus on the interpretation and application of the 2019 sublease. Neither Appellant nor Appellee contend that the 1996 sublease directly, or by incorporation through the 2019 sub-sublease, relate to the issues raised in this appeal. Based on our decision herein, we decline to remand solely for a correction of the order and opinion to quote the 2019 sub-sublease.

***Youndt*** to assert that it could raise a claim of fraudulent non-disclosure despite the as-is and integration provisions in the 2019 sub-sublease. ***See*** Appellant's Brief at 15, 18, 23. Appellant argues that when properly interpreted, the as-is provision of the 2019 sub-sublease did not preclude a defense based on Appellee's failures to disclose the premises' zoning, licensing, and code issues. ***Id.*** at 24-27.

The principles relevant to this appeal are well settled. "We review the order denying [an a]ppellant's petition to open the confessed judgment for an abuse of discretion." ***PNC Bank, Nat. Ass'n v. Bluestream Tech., Inc.***, 14 A.3d 831, 835 (Pa. Super. 2010) (citation omitted). "A petition to open rests within the discretion of the trial court, and may be granted if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury." ***Id.*** at 836 (citation omitted and formatting altered).

To establish a meritorious defense, a petitioner must produce evidence supporting its claim. ***Gur v. Nadav***, 178 A.3d 851, 858-59 (Pa. Super. 2018). The evidence must show a sufficient basis for an issue to be submitted to a jury, but the petitioner need not prove that it will prevail at trial. ***Id.*** at 858. This Court "must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations." ***Pops PCE TT, LP v. R & R Rest. Grp., LLC.***, 208 A.3d 79, 86 (Pa. Super. 2019) (citation omitted), *appeal denied*, 223 A.3d 656 (Pa. 2020).

"The legal effect or enforceability of a contact provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard." *Id.* at 87 (citations and quotation marks omitted). Our review of the trial court's interpretation of a contract is *de novo*, and our scope of review is plenary. *Mitch v. XTO Energy*, *Inc.*, 212 A.3d 1135, 1138 (Pa. Super. 2019) (citation omitted).

In *Youndt*, the trial court sustained the seller's preliminary objections to the buyers' amended complaint, which asserted the seller's fraud in the sale of a motel. *Youndt*, 868 A.2d at 543-44. The *Youndt* Court initially determined that the parol evidence rule barred evidence of the seller's affirmative misrepresentations and that the buyer failed to plead a cause of action for fraudulent concealment. *Id.* at 545-50. The trial court also concluded that an agreement for sale barred the buyers' claims that the seller intentionally and fraudulently failed to disclose problems with the motel's water and sewage system.[7] *Id.* at 542-43, 552.

_____

[7] In *Youndt*, the agreement for sale contained the following provisions:

Clause C states that the "Seller shall warrant Water Pipes to Motel Units." Clause D states that "Buyer is Buying Property in as is Condition." On the second page of the Agreement, the final paragraph is entitled "Representations" and it states in bold print:

**It is understood that Buyer has inspected the property, or hereby waives the right to do so and has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller or any other**

*(Footnote Continued Next Page)*

Of relevance to this appeal, the *Youndt* Court separately addressed the buyers' claim for fraudulent nondisclosure.[8] *Id.* at 550. The Court noted that the Restatement (Second) of Torts § 551 imposed a duty to disclose as follows:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
>> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>>
>> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

---

> **officer, partner or employee of Seller, or by any Agent, Subagent, their salespeople and employees, officers and/or partners.**
>
> The paragraph continues in regular print and states that Appellants were purchasing the property "in its present condition unless otherwise specified herein."

*Youndt*, 868 A.2d at 543 (emphasis in original). The agreement for sale at issue in *Youndt* also included an integration clause. *Id.*

[8] As the *Youndt* Court noted, "[t]here are two separate torts that impose liability for fraud upon a vendor of real estate in a commercial or residential transaction even though the vendor made no affirmative misrepresentation: (1) Fraudulent Concealment; and (2) Fraudulent Nondisclosure." *Id.* at 549 (citations omitted).

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Id.* at 550 (quoting Restatement (Second) Torts § 551 (1977)).

The *Youndt* Court held that the buyers failed to establish the seller's duty to disclose under Section 551(2)(e). *Id.* at 551. The Court reasoned that the buyers (1) "assumed the risk as to the existence of a defect [in the sewage system" under the sales agreement, and (2) either waived or did not afford themselves the opportunity to inspect as provided in the sales agreement. *Id.* at 551-52. The Court noted that

to a considerable extent, sanctioned by the customs and mores of the community, superior information and better business acumen are legitimate advantages, which lead to no liability. The [seller in a business transaction] may reasonably expect the [buyer] to make his own investigation, draw his own conclusions and protect himself; and if the [buyer] is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the [seller] is under no obligation to make good his deficiencies.

*Id.* at 551–52 (citation omitted). Accordingly, the ***Youndt*** Court affirmed the trial court's decision to sustain the seller's preliminary objection and dismiss the buyers' fraudulent nondisclosure claim. ***Id.*** at 552.

Here, as noted above, Appellant relies on ***Youndt*** to assert that the 2019 sub-sublease did not bar the fraudulent nondisclosure defense it raised in its petition to open the confessed judgment. Appellant's Brief at 15, 22-23. In support, Appellant interprets the three sentences of the as-is provision of the 2019 sub-sublease as two distinct parts. ***Id.*** at 24-27. According to Appellant, the first part consisted of the first two sentences, which when read together, concerned the physical condition of the premises. ***Id.*** The second part, which consisted of the third sentence, concerned Appellee's disclaimers of the premises' legal condition. ***Id.*** at 27. Appellant continues that because the term "as is" applied only in the first part of the provision concerning physical defects, Appellant did not assume the risk of Appellee's fraudulent nondisclosures concerning the premises' legal condition, such as zoning, licensing, and code issues. ***Id.*** at 27. Alternatively, Appellant contends that the as-is provision was ambiguous and that the intended meaning of the provision was a jury issue. ***Id.*** Appellant therefore concludes that it stated a meritorious fraudulent nondisclosure defense justifying the opening of the confessed judgment. ***Id.***

Appellee counters that ***Youndt*** requires this Court to affirm the trial court's denial of Appellant's petition to open the confessed judgment. Appellee's Brief at 19-20. Appellee asserts that the as-is provision in the 2019

sub-sublease established that Appellant agreed to assume the risk of both the physical and legal defects in the premises and that Appellee had no duty to disclose the "purported code or zoning violations." *Id.* at 17-19. Accordingly, Appellee request that this Court uphold the trial court's denial of Appellant's petition to open the confession of judgment.

It is well settled that

[i]n interpreting the language of a contract, we attempt to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning. Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, we will not interpret one provision of a contract in a manner which results in another portion being annulled.

*LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647-48 (Pa. 2009) (citations omitted).

Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. . . .

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429-30 (Pa. 2001) (citations omitted and formatting altered).  This Court "'will not imply a contract different than that which the parties have expressly adopted.  This rule is particularly apt when reviewing a contract involving two parties of relatively equal bargaining power, as is generally the case in a commercial lease setting." *Cambria-Stoltz Enterprises v. TNT Investments*, 747 A.2d 947, 950 (Pa. Super. 2000) (citations and quotation marks omitted).

Instantly, we reiterate that the as-is provision of the 2019 sub-sublease consists of three sentences in a single paragraph, which stated, in relevant part:

> [Appellant] has examined the Premises prior to and as a condition precedent to the execution hereof, and its execution of this Sub-sublease is conclusive evidence of [Appellant]'s acceptance of the Premises in their "AS IS" condition, including all latent conditions thereof.  [Appellee] has no obligation to alter, repair, decorate or further improve the Premises, and any alteration, repairs, or modification necessary for [Appellant] to use the Premises shall be made at the sole cost and expense of [Appellant] . . . . [Appellant] acknowledges and agrees that . . . that neither [Appellee], its agents or representatives have made any representation as to: (i) the physical condition, repair, profitability of operation or possible uses of this Premises, (ii) the laws, governmental regulations and insurance underwriting standards and requirements applicable to the Premises or (iii) the compliance by the Premises with such laws, regulations and requirements and with the terms of the Sublease.

2019 Sub-Sublease at 5.

The first sentence of the as-is provision states that Appellant "examined" the premises and accepted it "as is" as to "**all** latent defects." 2019 Sub-Sublease at 5 (emphasis added).  The first sentence did not qualify

the phrase "latent defects." *See id.* The second sentence used terms such as "alter," "decorate," and "improve," which could concern physical aspects of the premises. *See id.* However, the second sentence also absolved Appellee of the costs of alterations, repair, or modification "necessary for [Appellant's] use." *See id.* The phrase "necessary for use" encompasses not only physical but also legal conditions, as Appellant, for example, claimed that faulty electrical work and outdated fire sprinkler systems did not comply with codes and regulations. *See* Pet. to Open at 3 & Ex. A. The third sentence of the as-is provision disclaimed any representation by Appellee as to the "physical condition" and "possible" uses of the premises, as well as the premises' "compliance" with applicable "laws" and "regulations." *See* 2019 Sub-Sublease at 5.

Based on the foregoing, we conclude that Appellant's interpretation of the as-is provision as two distinct parts concerning the premises' physical and legal condition lacks merit.[9] Contrary to Appellant's claim, the first two sentences of the as-is provision did not concern only physical defects. Further, the third sentence clearly describes physical and legal defects. When read as a whole, the as-is provision established Appellant's acceptance of the premises as-is concerning **all** latent defects without qualification as to whether

---

[9] As noted above the trial court did not consider the language of the 2019 sub-sublease. Nevertheless, this Court considers the interpretation and application of the 2019 sub-sublease *de novo*. *See Pops*, 208 A.3d at 87 *Mitch*, 212 A.3d at 1138.

the defect was physical or legal. *See id.* Similar to *Youndt*, the 2019 sub-sublease's as-is provision required Appellant to assume the risk and costs to make the premises suitable to Appellant's use. *See Youndt*, 868 A.2d at 543, 551-52. As in *Youndt*, we are constrained to conclude that Appellant failed to establish Appellee's duty to disclose legal defects. *See id.* at 551-52. Accordingly, Appellant has not established a meritorious fraudulent nondisclosure defense against Appellee, and we will not disturb the trial court's ruling.[10] *See PNC Bank*, 14 A.3d at 835.

Next, Appellant contends that the trial court's ruling in the instant case was "unreasonable, arbitrary, or capricious" because it was inconsistent with the court's ruling in Appellant's separate action against Appellee. Appellant's Brief at 28. Appellant notes that the trial court determined that Appellant sufficiently alleged a claim of fraudulent nondisclosure in its separate action against Appellee and concluded that the as-is provision was ambiguous.[11] *Id.*

_____

[10] Because we conclude that Appellant failed to establish Appellee's duty to disclose in light of the as-is provision in the 2019 sub-sublease and *Youndt*, we need not address Appellant's argument that the integration provision of the 2019 sub-sublease did not bar its proposed fraudulent nondisclosure defense.

[11] More specifically, as noted above, the trial court overruled Appellee's preliminary objection in Appellant's separate action against Appellee. The trial court reasoned that the as-is provision of the 2019 sub-sublease "**may** be subject to different interpretations" and that "**the allegations in the amended complaint** are specific enough to state a cause" of action for fraudulent nondisclosure. Order, No. 200302732, at 1 n.1, 2 & n.4 (emphases added).

*(Footnote Continued Next Page)*

at 30-31. Appellant notes that its allegations in its petition to open the confessed judgment in the present case and in its amended complaint in the separate action are the same. *Id.* at 35-36. Appellant further asserts that the legal standards for reviewing a petition to open a confessed judgment and a preliminary objection are the same. *Id.* at 28, 30. Appellant requests that this Court apply judicial estoppel to resolve the inconsistency between the trial court's rulings in the instant case and Appellant's separate action against Appellee.[12] *Id.* at 32-38.

_____

We note that Appellant did not raise the possible inconsistencies between the trial court's rulings on Appellant's petition to open the confessed judgment and Appellee's preliminary objection in the trial court. Further, the trial court addressed the issue in its April 9, 2021 opinion. However, because the trial court ruled on Appellee's preliminary objections thirty-one days after the trial court denied Appellant's petition to open the confessed judgment, Appellant did not have an opportunity to file a supplemental motion for reconsideration to preserve the issue when challenging the denial of its petition to open. Therefore, we decline to find waiver.

[12] This Court discussed judicial estoppel as follows:

> Our Supreme Court has held that as a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. Accordingly, judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; and (2) that the appellant's contention was successfully maintained in that action.

> "The purpose of this doctrine is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires."

*(Footnote Continued Next Page)*

Appellee responds that the standards governing the trial court's rulings in the instant case and in Appellant's separate action against Appellee are materially different. Appellee's Brief at 20-22. Appellee adds that judicial estoppel applies to parties, not courts. *Id.* at 23-24.

For the reasons that follow, we conclude that materially different standards distinguish the trial court's consideration of a petition to open and preliminary objections, and, therefore, Appellant's arguments that the trial court's rulings were so inconsistent as to require estoppel of the trial court's denial of the petition to open lack merit.

As noted above, in a petition to open a confessed judgment, a petitioner must produce evidence supporting its claim of a meritorious defense. *Gur*, 178 A.3d at 859.

> The standard of sufficiency [when reviewing the merits of a proposed defense] is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations.

*Pops*, 208 A.3d at 86 (citation omitted).

In the context of preliminary objections, the *Youndt* Court stated:

> Where affirmance of the trial court's order sustaining preliminary objections would result in the dismissal of an action, we may do so only when the case is clear and free from doubt.

---

*Westfield Ins. Co. v. Astra Foods Inc.*, 134 A.3d 1045, 1051 (Pa. Super. 2016) (citations omitted).

- 19 -

To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. . . . **A demurrer tests the sufficiency of challenged pleadings**. Fact-based defenses, even those which might ultimately inure to the defendant's benefit, are thus irrelevant on demurrer.

*Youndt*, 868 A.2d at 544 (emphasis added). Put differently, "[p]reliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citation omitted).

Instantly, the standards governing the trial court's ruling on Appellee's preliminary objections only required a review of the sufficiency of the **allegations** in Appellant's amended complaint in the separate action against Appellee. *See id.* The standards governing the trial court's ruling on Appellant's petition to open required the trial court to consider the sufficiency of the Appellant's **evidence** concerning its proposed defense. *See Pops*, 208 A.3d at 86. While Appellant's allegations in its separate action against Appellee and the instant petition to open the confessed judgment were similar in that Appellant asserted Appellee's nondisclosure of the premises' zoning, licensing, and code violations, we cannot conclude that the trial court reached inconsistent results. Rather, different legal standards applied when the trial court ruled on Appellant's petition to open the confessed judgment and Appellee's preliminary objection in Appellant's separate action against Appellee. Accordingly, Appellant was not entitled to open the confessed

judgment based on the trial court's ruling on Appellee's preliminary objection in Appellant's separate action.[13]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022

---

[13] We emphasize that our decision to affirm the order denying Appellant's petition to open the confessed judgment is limited to the arguments presented in this appeal.  **See Youndt**, 868 A.2d at 543, 551-52.  Therefore, we do not opine on the trial court overruling Appellee's preliminary objections in Appellant's separate action.  Our decision in this appeal also does not preclude Appellant from asserting, or the trial court from finding, that the as-is provision in the sub-sublease is ambiguous for reasons different than those described herein.

Additionally, Appellant does not argue in this appeal that the trial court erred in denying its request to stay a decision on its petition to open the confessed judgment pending its separate action against Appellee.  Nevertheless, if Appellant were to prevail in its separate action against Appellee, there may be grounds for Appellant to open the confessed judgment.  **Cf. PNC Bank**, 14 A.3d at 840 (noting that if a party were to prevail in a separate action for fraud against the opposing party who entered a confessed judgment, then the opposing party "would no longer be entitled to enforce the confessed judgment").