Jacob F. WELTEROTH, Gregory F. Welteroth and Joseph Anthony Realty, LLC, Appellants

v.

Cynthia L. HARVEY, Rebecca E. Barr & Gerald R. Barr, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 18, 2006.

Filed Nov. 29, 2006.

Robin Read, Williamsport, for appellants.

James N. Bryant, Milheim, for appellees.

BEFORE: MUSMANNO, TODD and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Appellants, Jacob F. Welteroth, Gregory F. Welteroth and Joseph Anthony Realty, appeal from the December 8, 2005

Order sustaining appellees' preliminary objections in the nature of a demurrer.

¶ 2 On or about February 25, 2005, appellants and appellees executed a Standard Agreement for the Sale of Real Estate ("Agreement").[1] Record, No. 6, Complaint, Exb. A. Pursuant to the terms of the Agreement, appellees agreed to convey property located on Penns Creek Road in Spring Mills for the purchase price of $155,000. *Id.* The property included a two-story frame dwelling house erected on a parcel, which was approximately six acres in size ("Penns Creek property"). Record, No. 2, Lis Pendens, Deed. The Agreement further provided for closing on the Penns Creek property to occur on or before May 25, 2005. Record, No. 6, Complaint, Exb. A.

¶ 3 On or about July 8, 2005, appellants commenced this action by filing a praecipe for a writ of summons and, in conjunction therewith, a praecipe for lis pendens. Record, No. 1, *accord,* Record, No. 2. Shortly thereafter, on August 26, 2005, appellees filed a praecipe to enter a rule to file a complaint. Record, No. 5. Appellants responded by filing a timely complaint on September 15, 2005. Record, No. 6. The complaint alleged, *inter alia,* appellees had breached the Agreement by timbering off roughly 30 fully-grown trees, leaving high stumps and damage to the grounds caused by the dragging of logs. *Id.* The complaint also alleged the logging operation had resulted in a $13,227 devaluation of the Penns Creek property, a figure which accounted for the loss of the timber, the removal of the stumps, clean-up costs, and forester costs. *Id.* The complaint further alleged that on July 8, 2005, appellants offered to modify the Agreement to ensure the closing would go

through subsequently if appellees would agree to deposit $25,000 in escrow to ensure adequate compensation for cleaning up after the logging operation. *Id.* Appellees flatly rejected this offer. Consequently, appellants came before the trial court seeking both specific performance and/or damages for breach of the Agreement and damages for conversion of the timber. *Id.*

¶ 4 On September 27, 2005, appellees filed preliminary objections in the nature of a demurrer. *See* Pa.R.C.P. 1028(4), **Preliminary Objections.** The demurrer asserted, *inter alia,* the Agreement provided exclusive remedies that appellants had failed to exercise and, thus, appellants had failed to state a cause of action. Record, No. 8. In attempting to substantiate this assertion, appellees pointed to the following provision in the Agreement to illustrate appellants' rights:

> Within —— DAYS (15 days if not specified) of the execution of the Agreement, Buyer, at Buyer's expense, may choose to have inspections and/or certificates completed by licensed or otherwise qualified professionals.

Record, No. 8, *accord,* Record, No. 6, Complaint, Exb. A.

¶ 5 Appellees then pointed to the following provision in the Agreement in asserting that appellants had failed to exercise their exclusive contractual remedies:

> **Option 2, Within the time given for completing inspections:**
>
> 1. Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 25 of this Agreement, UNLESS the total cost to correct

---

1. The Standard Agreement for the Sale of Real Estate was prepared by the Pennsylvania Association of Realtors and is used to govern the conduct of parties in real estate transactions across the Commonwealth. Record, No. 6, Complaint, Exb. A.

the conditions contained in the report(s) is more than *$500*.

2. If the total cost to correct the conditions contained in the report(s) EXCEEDS the amount specified in paragraph 8(c) (Option 2); Buyer will deliver the report(s) to Seller within the time given for inspection.

   a. Seller will within *7* DAYS of receiving the report(s), inform the Buyer in writing of Seller's choice to:

     (1) Make repairs before settlement so that the remaining cost to repair conditions contained in the report(s) is less than or equal to the amount specified in paragraph 8(c) (Option 2).

     (2) Credit Buyer at settlement for the difference between the estimated cost of repairing the conditions contained in the report(s) and the amount specified in paragraph 8(c) (Option 2). This option must be acceptable to the mortgage lender, if any.

     (3) Not make repairs and not credit Buyer at settlement for any costs to repair conditions contained in the report(s).

   b. If Seller chooses to make repairs or credit Buyer at settlement as specified in Paragraph 8(c) (Option 2), Buyer will accept the Property and agree to the RELEASE set forth in paragraph 2 of this Agreement.

   c. If Seller chooses not to make repairs and not to credit Buyer at settlement, or if Seller fails to choose any option within the time given, Buyer will, within *5* DAYS:

     (1) Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 25 of this Agreement, OR

     (2) Terminate this Agreement in writing by notice to Seller, in which case all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID.

Record, No. 6, Complaint, Exb. A ("remedies provision").[2]

¶ 6 Appellees further asserted in their demurrer that at "the time [appellants] inspected the property, the property was being logged. This was open and obvious." Record, No. 7.

¶ 7 The trial court sustained appellees' demurrer with respect to appellants' claim for specific performance while simultaneously declining to address appellants' claims for breach of contract and conversion of timber and penned an Opinion outlining its reasons for doing so. Trial Court Opinion, Kistler, J., 12/08/05, at 4. The trial court relied on the provisions of the Agreement previously outlined at length and concluded appellants had failed to state a cause of action by virtue of refusing to exercise their exclusive remedies under the Agreement. *Id.*

¶ 8 Subsequently, appellants perfected a timely appeal with this Court. On February 3, 2006, the trial judge issued an Opinion as mandated by Pennsylvania Rule of Appellate Procedure 1925(a), **Opinion in Support of Order.** The trial judge noted that he had erred in relying on appellees' statement that at "the time [appellants] inspected the property, the property was being logged. This was open and obvious." Record, No. 16, Rule 1925(a) Opinion, Kistler, J., 02/03/06, at 2. He further

**2.** The underlined numerals were filled into the form Agreement by the parties.

noted, however, that this error was "de minimis." *Id.*

¶ 9 Appellant raises the following issues for our review:

A. Whether the trial court erred in granting appellees' preliminary objections in the nature of a demurrer because there were substantial issues of material fact and because it applied an improper standard?

B. Whether the trial court misinterpreted the duties, rights and responsibilities of buyers and sellers under the terms of a real estate sales agreement?

C. Whether the trial court erred in finding specific performance is not a proper remedy under the circumstances of this case?

Appellants' brief at 4.

¶ 10 Our scope of review over a trial court's decision to sustain preliminary objections in the nature of a demurrer is plenary and our standard of review is identical to the trial court's—namely, accepting all of the plaintiff's material averments as true, the question is whether the complaint states a claim for relief cognizable under the law. *Schwarzwaelder v. Fox*, 895 A.2d 614, 618 (Pa.Super.2006) (citations omitted). When affirming a trial court's decision to sustain preliminary objections would result in a dismissal of an action, this Court will only affirm when the case is free and clear from doubt. *Youndt v. First Nat'l Bank*, 868 A.2d 539, 544 (Pa.Super.2005) (citation omitted). All material facts set forth in a complaint and reasonable deductions therefrom are admitted as true for the purposes of review. *Id.* at 542 (citation omitted).

■ ¶ 11 The first two issues appellants raise can fairly be analyzed conjunctively as they both advocate for the reversal of the trial court's Order based on legal and factual grounds that are inextricably linked. The crux of appellants' arguments, as outlined in these first two issues, is that the trial court erred as a matter of law in concluding the Agreement provided for an exclusive remedy and erred as a matter of law in crediting appellees' statement that the Penns Creek property was being timbered with appellants' knowledge during the 15–day inspection window.

■ ¶ 12 The interpretation of a contract is a matter of law and, as such, we need not defer to the trial court's reading of the Agreement. *Halpin v. LaSalle Univ.*, 432 Pa.Super. 476, 639 A.2d 37, 39 (1994) (citations omitted). If a contract is clear and unequivocal, its meaning must be determined by its contents alone. *Temple Univ. of the Commonwealth Sys. of Higher Educ. v. Allegheny Health Educ. and Research Found.*, 456 Pa.Super. 314, 690 A.2d 712, 714–715 (1997), *quoting Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982). When the language of a contract is clear, the contract speaks for itself and meaning cannot be given to it other than expressed. *Id.* It is axiomatic that contractual clauses must be construed, whenever possible, in a manner that effectuates all of the clauses being considered. *Flatley by Flatley v. Penman*, 429 Pa.Super. 517, 632 A.2d 1342, 1344 (1993), *citing In re Binenstock's Trust*, 410 Pa. 425, 190 A.2d 288 (1963).

¶ 13 We conclude the trial court erred as a matter of law in construing the Agreement. The plain and unambiguous language of the Agreement, which is set forth above, states that the remedies provision applies **"Within the given time for completing inspections."** Record, No. 6, Complaint, Exb. A (emphasis in the original). The unambiguous language of the Agreement provides that appellants were given 15 days to have "inspections and/or certifications completed by licensed or otherwise qualified professionals." *Id.* The

Agreement further unambiguously provides that appellants had the duty to deliver the reports from such inspections before the close of the 15–day inspection window and appellees, in turn, had seven days from the receipt of these reports to take curative action. *Id.* If appellees had refused to take curative measures, *only then* would the remedies provision have been triggered. *Id.* Nothing in the Agreement purports to limit appellants' right to inspect the property after the fifteen day window closes. Indeed, the fifteen day provision provides that appellant *"may* choose to have inspections." *Id.* (emphasis added). In short, the remedies provision only applies in limited circumstances. If appellant had elected to have a preliminary inspection, and the remaining relevant procedure of the Agreement had been followed, the remedies provision would have been triggered and would have foreclosed the remedies appellants seek for logging that had occurred up to the point when the inspection window had closed.

¶ 14 This interpretation is bolstered by another provision in the Agreement, which imposed the following duty on appellees: "Seller will maintain the Property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal wear and tear excepted." Record, No. 6, Complaint,

Exb. A. This provision is just as notable for what it does not state as for what it does state. The provision does not state that the appellees' duty terminates once the inspection window closes, or any other time prior to closing. In order to effectuate this provision, we cannot imply an artificial limitation on appellees' duties under the terms of the Agreement by foreclosing appellants' remedies for a breach of these duties after the inspection window has closed. *See Flatley by Flatley, supra* at 1344.[3]

¶ 15 There are additional problems in adopting the trial court's reading. The result of the trial court's holding that the remedies provision is dispositive is to interpret the Agreement in a manner which foreclosed any possibility for appellants to recover after the 15–day inspection window closed. Thus, even though appellants allegedly inspected the Penns Creek property within the 15–day window, they are not even left with the option of "taking it or leaving it" after they later discovered the logging. If they had the option of taking the Penns Creek property, the trial court obviously would not have dismissed their claim for specific performance. Conversely, appellees would be free to pursue a cause of action against appellants for refusing to close (had they refused to do so) on the property even if they had inten-

3. We believe the plain language interpretation of the Agreement is not only lawful but also logical. The intention behind the provisions *sub judice* is, seemingly, to create a mechanism for terminating or modifying an existing agreement within a short period of time after the agreement is consummated, as evinced by the 15–day default inspection window.

The result is a contractual safe harbor wherein the buyer is given the option to ensure he is getting that for which he bargained and, if he discovers he is not, to give the seller the option to cure under threat of default. If the buyer chooses not to exercise due diligence by having a property inspected during the inspection window, the buyer loses the opportunity to unilaterally terminate as a matter of course and must pursue the traditional remedies of damages and specific performance, which are more time consuming and more expensive. After the agreed upon inspection window closes, the parties are locked in. This interpretation allows for alleviation of the potential for high cost litigation down the road while also ensuring real estate transactions will be consummated as agreed upon.

In short, we find a plain language interpretation that incorporates a safe harbor is more equitable then the alternative outlined *infra*.

tionally burnt the property to the ground.[4] Without question this outcome is inherently inequitable, especially when based on a strained interpretation of the Agreement's language.

¶ 16 We also recognize the parties were free to extend the inspection window by mutual agreement until the date of closing, should they so desire. Yet, if this is the only protection for which appellants could have negotiated, the trial court's interpretation would result in a situation whereby the remedial provision would displace and, effectively eliminate, the remedies of damages and specific performance without the Agreement explicitly saying as much.

¶ 17 Further, the results of the trial court's interpretation take on an added negative significance due to the fact that the Agreement is a variation of a form contract prepared by the Pennsylvania Association of Realtors, which is used to govern the conduct of parties in real estate transactions across the Commonwealth. *See* footnote 1, *supra*. It is untenable to interpret the Agreement for allowing for only one of two outcomes—no buyer's remedy after the agreed upon inspection window closes or a "take it or leave it" remedy if the inspection window is extended to the date of closing. Such an interpretation would allow the Pennsylvania Association of Realtors to inadvertently dictate what remedies courts can afford for breach of the Agreement as manifested through the trial court's erroneous interpretation. The trial court's interpretation would also have a chilling effect on the real estate market and would be inherently inequitable.

■ ¶ 18 Having concluded the trial court erred as a matter of law in interpreting the Agreement, we now turn to the question of whether the trial court erred as a matter of law in concluding appellants were aware of the timbering prior to the close of the 15-day inspection window and, if it did, what effect this error had.[5] We have no hesitation in concluding the trial court erred in this regard.

¶ 19 Appellants averred the following in their complaint:

> Without consent of Buyers, in March or April, 2005, Defendants deliberately timbered and removed in excess of thirty (30) fully-grown and mature trees with an average diameter of approximately twenty (20) inches.

Record, No. 6, Complaint.

¶ 20 We are bound to accept this averment as a matter of law. *See Youndt, supra* at 544. It is reasonable to deduce from the evidence that appellants had until March 12, 2005 to conduct a preliminary inspection based on the language in the Agreement giving appellants fifteen days from the date of the Agreement's execution to conduct the inspection. *Id.* at 542. The question thus becomes whether appellants conducted the inspection, knew of the timbering, and decided to forego their remedy prior to March 12, 2005 *or* whether appellants did not learn of the timbering through a timely preliminary inspection.[6] Even though appellants failed to explicitly aver the latter in their complaint, we are guided by our standard of review which constrains us from affirming a trial

---

4. There is no provision in the Agreement that purports to transfer the risk of loss to appellants for intentional property destruction.

5. If appellants had learned of the timbering during an inspection conducted during the 15-day window, there would be little question that appellants' would be foreclosed from being afforded a remedy for the logging conducted *up to the time of the inspection* by their failure to forward the inspection reports to appellee which would have, in turn, triggered the curative and remedial provisions.

6. There is also a question of whether, even if appellants decided to forego their remedies in this regard, appellees conducted timbering after the window for exercising these remedies had closed, which could give rise to an action for specific performance and/or damages.

court's decision to sustain a demurrer when there is any doubt as to whether the trial court was correct. *Youndt, supra* at 544. The trial court aptly acknowledged it erred in relying on appellees' averment that appellants had known of the logging and failed to exercise their rights. *See Regal Indus. Corp. v. Crum & Forster, Inc.,* 890 A.2d 395, 398 (Pa.Super.2005) (defining a speaking demurrer as one which requires the aid of a fact not appearing on the face of the pleading being objected to and noting a speaking demurrer cannot be considered in sustaining a preliminary objections). Inasmuch as it is unclear from the record whether appellants failed to exercise their rights under the Agreement, the essential facts of this case are in doubt and the trial court's Order must be reversed. As such, the trial court's reliance on appellees' averment that appellants knew of the logging after a timely inspection is not *de minimis;* it is dispositive when viewed through the prism of an accurate interpretation of the Agreement.

¶ 21 In light of the foregoing, we conclude it is unnecessary to reach the merits of the appellants' third issue at this time. The decision as to whether specific performance in the matter *sub judice* is the appropriate remedy is better left until after a determination is made as to whether appellants' learned of the timbering in a manner which is not governed by the remedies provision.

¶ 22 Order reversed and case remanded for further proceedings not inconsistent with this Opinion.

¶ 23 Jurisdiction relinquished.

Due to the fact this question is not directly at issue, we will not propose a resolution should it arise.