J-A18008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DELAWARE AVENUE DEVELOPMENT CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| EB WATERFRONT DEVELOPMENT L.P. AND LIBERTY LANDING ASSOCIATES | |
| Appellees | No. 2473 EDA 2017 |

Appeal from the Order Entered June 28, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at: December Term, 2014 No. 02380

BEFORE:  STABILE, J., STEVENS, P.J.E.,[*] and STRASSBURGER, J.[**]

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 27, 2018**

Appellant, Delaware Avenue Development Corporation ("Delaware"), appeals from the June 28, 2017 order entered in the Court of Common Pleas of Philadelphia County, granting summary judgment in favor of Appellee, EB Waterfront Development LP ("Waterfront"), and against Delaware, while denying the summary judgment motion filed by Delaware against Waterfront.[1] Following review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[**] Retired Senior Judge assigned to the Superior Court.

[1] The trial court's order also granted summary judgment in favor of Liberty Landing Associates ("Liberty").  Delaware did not appeal from that part of the order and Liberty is not a party to this appeal.

The trial court provided the following factual and procedural history:

The parties are as follows: [Appellant,] Delaware Avenue Development Corporation ("Delaware"), a corporation of which Mark Mendelson is the sole shareholder, was a fifty percent partner in [] Liberty Landing Associates ("Liberty"), a general partnership with a sole asset, the Property. Delaware-Washington Corporation ("DWC"), an entity created by the Sheet Metal Workers' Union ("the Union"), was the other fifty percent owner. [Appellee,] EB Waterfront Development LP ("Waterfront"), is a limited partnership owned and controlled by Eric Blumenfeld.

The dispute centers on a transaction in which Delaware sold Waterfront its fifty percent partnership interest in Liberty. On January 27, 2012, Delaware and Waterfront entered into a contract, the Partnership Interest Purchase Agreement, or PIPA. Simultaneously, Waterfront and DWC executed a Contribution Agreement, with the ultimate purpose of transferring the neighboring parcel owned by DWC to the Partnership, so that both could be developed together.

[Section 2 of the] PIPA provides that Waterfront would pay Delaware $465,000 immediately upon execution (the "Initial Payment"). It also provides for a further payment of $5,535,000 (the "Contingent Payment") upon completion of a closing under the Contribution Agreement. The Note securing the PIPA states the following:

> All sums outstanding in connection with this Note shall be due and payable to
>
> Payee [Delaware] on the date (the "Maturity Date") that Maker [EB Waterfront] completes closing with [DWC] under that certain Contribution Agreement between Maker, DWC and other parties dated as of the date hereof (the "Contribution Agreement"). **If closing under the Contribution Agreement does not occur on or before December 31, 2012, the provisions of Section 3 of that certain [PIPA] by and among Maker, Payee and Mark Mendelson dated as of the date hereof (the "Purchase Agreement") shall be applicable and this Note shall be null and void.**

Section 3 of the PIPA states as follows:

> If closing under the Contribution Agreement ("Closing") does not occur by December 31, 2012, for any reason other than a default by Buyer under the Contribution Agreement, (i) Seller[, Delaware,] shall repay the Initial Payment to Buyer[, Waterfront,] no later than January 5, 2013, (ii) the Partnership Interest Note and Pledge shall be deemed canceled and shall be returned, marked "canceled" to Buyer, (iii) upon receipt of the repaid Initial Payment, and canceled Partnership Interest Note and Pledge, Buyer shall re-assign the [Delaware] Interest to Seller pursuant to an Assignment and Assumption of Partnership Interests . . . (the "Reassignment"), and (iv) upon repayment of the Initial Payment and delivery of the reassignment, this Agreement shall be null and void and the parties shall have no rights or obligations hereunder, with the Sections 9(e), 9(f) and 13 which shall survive.[2]

Closing did not occur under the Contribution Agreement by December 31, 2012, or indeed at all. Various conditions precedent to closing never occurred, including the conversion of the Partnership into a Limited Partnership, and the agreement by the Union to move their headquarters from the neighboring parcel. On February 28, 2014, DWC terminated the Contribution Agreement. At several points up until that date, Blumenfeld contacted Mendelson several times and indicated that the transaction was moving forward. Delaware alleges that Blumenfeld/Waterfront never notified them of the Termination.

Ultimately the Partnership sold the Property to an unrelated entity, K4, for a total of $10 million. Delaware filed this action, seeking the $5.5 million Contingent Payment from Waterfront. It also filed, then removed, a *lis pendens* on the property. Waterfront's share of the proceeds of the sale were placed in escrow.[3]

---

[2] Paragraphs 9(e) and 9(f) relate to a different property that is not at issue in this case. Paragraph 13 includes provisions for default by both the buyers and sellers.

[3] The amount placed in escrow was approximately $2,667,500, representing the net proceeds from the sale.

J-A18008-18

Trial Court Opinion, 6/28/17, at 1-3 (emphasis added) (some capitalization omitted).

Delaware and Waterfront filed cross-motions for summary judgment on November 21, 2016. The trial court issued an order and opinion on June 28, 2017, granting Waterfront's motion and denying Delaware's motion. On July 7, 2017, Delaware filed a motion for reconsideration and, on July 26, 2017, filed a timely notice of appeal to this Court. By order entered August 11, 2017, the trial court denied Delaware's motion for reconsideration.

The trial court did not direct Delaware to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). On January 12, 2018, the trial court issued an opinion incorporating by reference its June 28, 2017 order and opinion, satisfying Pa.R.A.P. 1925(a).

In this appeal, Delaware asks us to consider two issues:

[1.] Did the trial court err by granting summary judgment in favor of [Waterfront] instead of granting summary judgment in favor of [Delaware]?

[2.] Alternatively, did the trial court err by granting summary judgment instead of denying the parties' cross-motions and order that the case be tried, because material issues of fact were in dispute?

Delaware's Brief at 5 (some capitalization omitted). We consider Appellant's issues together.

As our Supreme Court explained in **Murphy v. Duquesne University of the Holy Ghost**, 777 A.2d 418 (Pa. 2001):

Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order

- 4 -

of the trial court only where it is established that the court committed an error of law or abused its discretion. ***Capek v. Devito***, 767 A.2d 1047, 1048, n. 1 (Pa. 2001). As with all questions of law, our review is plenary. ***Phillips v. A−Best Products Co.***, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." ***Young v. PennDOT***, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. ***Pennsylvania State University v. County of Centre***, 532 Pa. 142, 615 A.2d 303, 304 (1992).

***Id.*** at 429.

In their respective motions for summary judgment, both Delaware and Waterfront recognized the proper standard articulated in the summary judgment rule, *i.e.*, that summary judgment may be entered if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Delaware's Motion for Summary Judgment, 11/21/16, at ¶ 101; Waterfront's Motion for Summary Judgment, 11/21/16, at ¶ 83. Throughout their motions, both parties represented that there were no genuine issues of material fact and provide detailed factual statements, with references to the record. In essence, each party acknowledged that there

were no genuine of issues of material fact that would preclude the grant of summary judgment in its respective favor. However, the parties differed in their contentions that they were entitled to judgment as a matter of law, with each arguing its entitlement to judgment in its favor. Regardless, as the trial court recognized, "[t]his case turns on the interpretation of the contracts between Delaware and Waterfront, which is a question of law, and therefore appropriate for disposal at summary judgment." Trial Court Opinion, 6/28/17, at 4.

As this Court observed in *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423 (Pa. Super. 2014):

> The legal standards governing our review of the trial court's contract interpretation are axiomatic. "The interpretation of a contract is a matter of law and, as such, we need not defer to the trial court's reading of the agreement." *Integrated Project Servs. v. HMS Interiors, Inc.*, 931 A.2d 724, 732 (Pa. Super. 2007) (quoting *Welteroth v. Harvey*, 912 A.2d 863, 866 (Pa. Super. 2006)).
>
>> It is also well-established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties.
>>
>> In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.
>> . . .
>
> *Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159, 1163 (2004) (citations modified).

*Id.* at 429-30 (brackets and some citations omitted). Further, "[m]ere disagreement between the parties on the meaning of language or the proper construction of contract terms does not constitute ambiguity." *Id.* at 431 (quoting *Pappas v. UNUM Life Ins. Co. of America*, 856 A.2d 183, 187 (Pa. Super. 2004)).

Here, the trial court reviewed the contract language and concluded Waterfront was entitled to summary judgment because the contract did not require Waterfront to pay Delaware the Contingent Payment. Trial Court Opinion, 6/28/17, at 4. The court explained:

> The plain language of the PIPA provides for the Contingent Payment only if a specific condition precedent occurs – the Closing under the Contribution Agreement by December 31, 2012. The Note provides that if closing does not occur by that date, Section 3 of the PIPA applies and "this Note shall be null and void." It is undisputed that the Closing did not occur by that date.
>
> Delaware argues that Waterfront had an obligation to inform it of the Union's termination of the Contribution Agreement of the invocation of Section 3 of the PIPA. However, no notification requirement exists in the PIPA or the Note. Moreover, the unwinding provision described in Section 3 requires the first action to be taken by Delaware, not Waterfront or any other person. The plain language states that if no closing took place by December 31, 2012, Delaware could get its interest in Liberty back by returning the Initial Payment by January 5, 2013.[4] Because there was a hard deadline, Delaware's allegations that Waterfront misled it by communication that things are going well are irrelevant. Delaware knew of the December 31 deadline; it could have inquired if the closing had occurred or not by that point, and

_____

[4] We note that Section 15.5 of the PIPA provides, "Time is of the essence of this Agreement and each provision hereof in which time of performance is established."

- 7 -

thereafter, returned the Initial Payment to receive the Partnership Interest back. It did not do so.

Delaware cites to a notice provision in the PIPA, Section 15.6. However this provision does not require notice to be given in any specific circumstance, but merely requires that if notice is to be given, that it shall be in writing to the specified addresses.

Delaware's argument that the course of performance requires a finding in its favor is unavailing. The court may not party (*sic*) behavior to discern intent when contract terms are unambiguous such as the ones at issue here. "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. . . . Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." The plain language of the PIPA does not require notice from Waterfront to Delaware of failure to close under the Contribution Agreement or of Termination.

Similarly, Delaware's argument that the duty of good faith and fair dealing requires Waterfront to pay the Contingent Payment is without merit. The duty of good faith and fair dealing is inherent to a contract, and attaches to existing contractual duties. It does not create new contractual duties, such as a requirement to inform Delaware of the termination. Moreover, notification relating to the Termination is irrelevant, because Termination occurred well after the deadline for the closing had passed under the Contribution Agreement—and well after the deadline for Delaware to unwind the transaction.

Trial Court Opinion, 6/28/17, at 4-6 (quoting **Murphy**, 777 A.2d at 429) (additional citation omitted).

We find no error of law or abuse of discretion in the trial court's determination that Waterfront is entitled to the grant of summary judgment based on the contractual language and, in particular, the language of the Contribution Agreement and of Sections 2 and 3 of the PIPA as explained herein. Further, we find no merit to Appellant's contention that genuine issues

of material fact were in dispute. Again, this case involves contract language that is unambiguous. Despite its assertion that material facts remain in dispute, and a footnote that questions whether Waterfront was in breach of the Purchase Agreement, *see* Appellant's Brief at 40 n.15, Delaware has failed to identify any material disputed facts that warrant denial of summary judgment and a remand for trial.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18