J-S51002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| OGONTZ PROPERTY HOLDINGS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHAIM LANDAU | |
| Appellant | No. 2645 EDA 2016 |

Appeal from the Order Entered July 18, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 002000 March Term, 2016

BEFORE:  BOWES, J., SHOGAN, J., AND STEVENS, P.J.E.,*

MEMORANDUM BY BOWES, J.:                    **FILED MAY 14, 2018**

Chaim Landau appeals the July 18, 2016 order denying his motion to open or strike the $352,000 judgment entered by confession in connection with his personal guaranty of a commercial loan.  We affirm.

On February 25, 2015, Phili Equities, LLC ("Phili Equities") agreed to purchase several commercial properties located in Philadelphia, Pennsylvania for the sum of $1,400,000.  Appellant is the owner and sole member of Phili Equities.  In order to facilitate the purchase, Phili Equities obtained a primary mortgage on the properties totaling $700,000.  It financed an additional $350,000 of the purchase price through a short-term loan with the property owner, Ogontz Property Holdings, LLC, ("Ogontz Holdings").  As the short-term loan is the genesis of this appeal, we discuss it further.

_____

* Former Justice specially assigned to the Superior Court.

A promissory note (the "Note") and a second mortgage on the properties secured the $350,000 principal. The Note had a six-month maturity date. Prior to satisfying the total debt at the Note's maturity, Phili Equities was required to make monthly interest-only payments at eight percent. However, pursuant to the terms of the mortgage, in the event of a default, the interest increased to twelve percent. In addition to the enhanced interest under the second mortgage, the Note assessed a late charge equaling five percent of the outstanding principle. The loan agreement, Note, and second mortgage were identified collectively as the loan documents.

As additional security for the $350,000 loan, Appellant, acting in his individual capacity, executed a Guaranty and Surety Agreement (the "Guaranty") in favor of Ogontz Holdings. Pursuant to the Guaranty, which included a confession of judgment clause, Appellant agreed unconditionally to guarantee the payment of any monies due to Ogontz Holdings under the sales agreement, second mortgage, and Note.

The Guaranty, which identified Ogontz Holdings as the "Lender," Phili Equites as the "Borrower," and Appellant as the "Guarantor," provided in pertinent part as follows:

> 2. Obligations Guaranteed. (a) [Appellant] unconditionally guarantees to [Ogontz Holdings] (1) the prompt and unconditional payment of the Loan and the interest thereon, whether now or hereafter advanced, as the same shall become due and payable under the Note and Loan Agreement, whether

at stated maturity, by acceleration or otherwise, and any and all sums of money which, at the time, may have become or become due and payable under the provisions of the Loan Agreement, the Mortgage or any other Loan Document, and (ii) payment in full of any and all expenses that may be paid or incurred by [Ogontz Holdings] in the collection of all or any portion of [Appellant's] obligations hereunder or the exercise or enforcement of any one or more of the other rights, powers, privileges, remedies and interests of [Ogontz Holdings] under the Loan Documents of hereunder, irrespective of the manner or success of any such collection, exercise or enforcement, and whether or not such expenses constitute part of [Phili Equities's] obligation.

3. <u>Unconditional Guaranty</u>. This Guaranty is an absolute, unconditional, present and continuing guaranty of payment and performance and not of collection and is in no way conditioned or contingent upon any attempt to enforce [Ogontz Holdings's] rights against [Phili Equities] or to collect from [Phili Equities] or upon any other condition or contingency; accordingly, [Ogontz Holdings] shall have the right to proceed against [Appellant] immediately upon an Event of Default without taking any prior action or proceeding to enforce the Loan Documents or any of them or for the liquidation or foreclosure of any security [Ogontz Holdings] may at any time hold pursuant thereto. [Appellant] hereby waives and releases any claims (within the meaning of 11 U.S.C. § 101) which [he] may have against [Phili Equities] arising from a payment made by [Appellant] under the Guaranty and agrees not to assert or take advantage of any subrogation rights of [Appellant] or any right of [Appellant] to proceed against [Phili Equities] for reimbursement. It is expressly understood that the waivers and agreements of [Appellant] constitute additional and cumulative benefits given to [Ogontz Holdings] for its security and as an inducement of its extension of credit to [Phili Equites].

Guaranty and Surety Agreement, 2/25/15, at 1-2.

The Guaranty enumerated a litany of situations that constituted an "Event of Default," any of which would trigger a warrant of attorney to

- 3 -

confess judgment under the agreement. The pertinent recital specified in bold, capitalized text,

> 13 POWERS TO CONFESS JUDGMENT. [Appellant] hereby empowers any attorney of any court of record, after the occurrence of any event of default hereunder, to appear for [him] and, with or without complaint filed, confess judgment, or a series of judgments, against [him] in favor of [Ogontz Holdings] for the amount of the obligations and an attorney's commission of the greater of five percent (5%) of such principal and interest or $2,000.00 which shall be added as a reasonable attorney's fee and for doing so the guaranty or copy verified by affidavit shall be sufficient warrant. [Appellant] hereby forever waives and releases all errors in said proceedings and all rights of appeal and all relief from any and all appraisement, stay or exemption laws or any stay now in force or hereafter enacted.

*Id*. at 5 (capitalization omitted). Thus, in addition to the increased interest and five percent fee that were incorporated into the second mortgage and Note that the corporate entity executed, the Guaranty, which Appellant signed individually, assessed an additional five percent attorney's commission upon confession of judgment.

Finally, the Guaranty included an integration clause that read,

> 20. Entire Agreement; Amendments. This Guaranty contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreement or statements relating to such subject matter, and none of the terms and provisions hereof may be waived, amended or terminated except by a written instrument signed by the Person against whom enforcement of the waiver amendment or termination is sought.

*Id*. at 8.

The Note matured on August 25, 2015. However, Phili Equities failed to satisfy the principal in full on that date as required by its terms. Instead, it paid approximately $30,000 of the principal and continued to make the monthly interest payments pursuant to the Note.

On March 21, 2016, Ogontz Holdings filed a complaint in confession of judgment alleging that, as guarantor, Appellant was liable for Phili Equities's default under the loan documents, and that the default triggered the confession of judgment clause included in the Guaranty. Thus, Ogontz Holdings requested the trial court enter judgement against Appellant in the sum of $352,000, including late charges, continuing interest, and attorney's fees as authorized by the loan documents and Guaranty. The confessed judgment was calculated as follows:

| | |
|---|---|
| Principal | $320,000 |
| 5% Late Charge | $ 16, 000 |
| 5% Attorneys' | $ 16, 000 |
| | |
| Total | $352,000 |

On May 19, 2016, Appellant filed a petition to strike or open the confessed judgment. As it related to striking the confessed judgment, Appellant leveled six challenges asserting facial defects in the complaint, Guaranty, or both. In regards to opening the judgment, Appellant asserted that the Guaranty was procured by fraud and executed unknowingly, involuntarily, or unintelligently. He also asserted that Ogontz Holdings was equitably estopped from confessing judgment and that issues of fact existed

as to Phili Equities's alleged indebtedness. The trial court denied the petition to strike or open the confessed judgment. This appeal followed.[1]

Appellant reiterates his prior complaints on appeal.

1. Whether the [trial] [c]ourt erred as a matter of law or otherwise abused its discretion by deciding the [p]etition without a hearing and/or without taking testimony or evidence.

2. Whether the [trial] [c]ourt erred as a matter of law or otherwise abused its discretion by denying the [p]etition and refusing to strike the [c]onfessed [j]udgment entered against [Appellant].

3. Whether the [trial] [c]ourt erred as a matter of law or otherwise abused its discretion by denying the [p]etition and refusing to open the [c]onfessed [j]udgment entered against [Appellant].

Appellant's brief at 8.

We review the trial court's denial of a petition to open or strike a confessed judgment for an abuse of discretion or legal error. *First Union Nat. Bank v. Portside Refrigerated Services, Inc.*, 827 A.2d 1224 (Pa.Super. 2003). A judgment of confession should be stricken only if there is a defect on the face of the record. *Id*. On appeal, our review is limited to

---

[1] Ogontz Holdings confessed a separate judgment against Phili Equities pursuant to the warranty of attorney provision included in the loan documents. The trial court denied Phili Equities's petition to strike/open the judgment filed in that case as well. Our independent review of the Superior Court and trial court dockets did not reveal a companion appeal by Phili Equities. Nevertheless, to the extent that the corporate entity pursued an appeal in that case, we do not address it herein.

whether the record, as filed by the party confessing judgment, is adequate to sustain the judgment. *Id*.; ***Germantown Savings Bank v. Talacki,*** 657 A.2d 1285 (Pa.Super. 1995). With respect to Appellant's petition to open, we review the trial court's determination for an abuse of discretion. ***First Union Nat. Bank***, ***supra*** at 1227. Absent an abuse of discretion or error of law, we will sustain the trial court's decision. ***Id***.

Pennsylvania Rules of Civil Procedure 2959 outlines the procedure for striking or opening a judgment entered by confession. It provides,

Rule 2959. Striking Off or Opening Judgment; Pleadings; Procedure

(a)(1) Relief from a judgment by confession shall be sought by petition. Except as provided in subparagraph (2), all grounds for relief whether to strike off the judgment or to open it must be asserted in a single petition. The petition may be filed in the county in which the judgment was originally entered, in any county to which the judgment has been transferred or in any other county in which the sheriff has received a writ of execution directed to the sheriff to enforce the judgment.

. . . .

(e) The court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions and other evidence. The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.

Pa.R.C.P. 2959 (a)(1), (e).

First, we consider whether the trial court erred in rejecting the petition without a hearing, and for the reasons that follow, conclude that no relief is

due. Appellant argues that he was entitled to oral argument prior to the trial court's decision to deny his petition to strike or open the confessed judgment. In **North Penn Consumer Discount Co. v. Shultz**, 378 A.2d 1275, 1278 (Pa.Super. 1977), we explained, "In the context of a judgment confessed on a judgment note, due process requires, at a minimum, that the judgment debtor have an opportunity to be heard prior to execution of the judgment against the debtor's property." Appellant invokes this principle as support for the proposition that the trial court erred in rejecting his petition to strike or open without first affording him the opportunity for oral argument. His reliance upon our holding in **North Penn** is unavailing.

Contrary to Appellant's protestations, we did not find in **North Penn** that the trial court was required to convene an oral argument prior to denying a petition to strike or open a confessed judgment. In reality, we held that, in the context of judgment confessed on a note, due process requires an opportunity to be heard **prior to execution of the judgment**, which has yet to occur in this case. Further, we explained that due process can be satisfied by procedural components such as the ability to file petitions to open the judgment, enforce a stay of execution, and to respond to a rule to show cause. **Id**.; **see also Dollar Bank v. Northwood Cheese Co.**, 637 A.2d 309, 313 (Pa.Super. 1994) (noting that an opportunity to be heard does not always require a hearing, and that other procedural means exist to satisfy due process requirement).

Instantly, Appellant was afforded opportunities to be heard. He filed a petition to strike or open the judgment, and a supporting memorandum of law, which assailed the confessed judgment on several fronts. Although the memorandum alluded to the general due process rights outlined in **North Penn**, **supra**, Appellant's petition to strike or open neglected to request either an oral argument or an evidentiary hearing. Nevertheless, before rejecting Appellant's petition on the merits of the assertions raised therein, the trial court reviewed Appellant's arguments in the petition, Ogontz Holdings's response, and the countervailing memoranda of law. Hence, Appellant had the opportunity to raise before the trial court all of his alleged grounds for relief, articulate his case, and have the trial court address his arguments on the merits prior to execution of the confessed judgment. The fact that the trial court did not require an oral argument or evidentiary hearing to dispose of Appellant's assertions is more an indictment of Appellant's legal position rather than an indication of the denial of due process. Hence, no relief is due.

Next, we address the litany of reasons that Appellant contends the confessed judgment should be stricken as facially defective. As noted, *supra*, we review the record as filed by the confessing party, *i.e.*, the complaint and exhibits containing the warrant of attorney, to determine whether it is adequate to sustain the judgment. **See First Union Nat. Bank**, **supra**.

Appellant's first complaint is that the parties indirectly nullified Appellant's personal guaranty by orally modifying the terms of the agreement between Ogontz Holdings and Phili Equities by extending the loan's maturity date for one year. Interestingly, Appellant does not dispute the fact that the Note matured on August 25, 2015, challenge the fact of Phili Equities's default, or even argue that the one-year extension actually applied. Instead, he posits that the endeavored oral modification, which never materialized, nullified the warrant of attorney in the loan documents. This position rests upon the proposition that the oral modification of a contract that contains a warrant of attorney nullifies the warrant of attorney absent clear evidence that the provision survived modification. *E.g.*, *Franz Tractor Co. v. Wyoming Valley Nursey*, 120 A.2d 303, 306 (Pa. 1956) ("It is true that a written contract may be modified by parol, but it does not follow that the warrant of attorney attaches to that modification.").

Appellant's argument misses the mark because the potential existence of a related oral agreement would require the consideration of facts outside of the record, which makes striking the judgment impossible. Recall that our scope of our review of the order denying the petition to strike the judgment by confession is limited to the complaint and the exhibit that includes the operative warrant of attorney, *i.e.*, the Guaranty. *See First Union Nat. Bank*, *supra* (review of petition to strike limited to examination of complaint and exhibits containing the warrant of attorney, to determine

- 10 -

whether documents are adequate to sustain the judgment). Instantly, the complaint does not reference either an oral or written modification and the exhibits do not support the notion that a modification exists. Hence, it is not obvious from the face of the documents of record that striking the judgment is warranted. Stated another way, since the record does not establish that the alleged modification discussions occurred, there is no evidence of a defect that would support striking the judgment by confession.

While Appellant's implication of an oral modification might justify opening the confessed judgement under Rule 2959 in some circumstances, *i.e.*, raising an issue required to be submitted to the fact finder, it is not a patent irregularity on the face of the record that would warrant striking it. ***See Resolution Trust Corp. v. Copley Qu–Wayne Assoc.***, 683 A.2d 269, 273 (Pa. 1996) ("If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike."). As Appellant does not seek to open the judgment on this basis, no relief is due.

Appellant next complains that aspects of the wording used in the warrant of attorney violated Pa.R.C.P. 2951(a) and 2952(a), which govern the commencement of confession actions and the contents of a complaint for a confessed judgment. Appellant first protests that the warrant of attorney included in the Guaranty indicates that Ogontz Holdings could confess

judgment without a complaint. He is correct insofar as Rule 2951(a) mandates that an action for a judgment by confession shall be commenced by "a complaint substantially in the form provided by Rule 2952." However, that is precisely what occurred herein. Ogontz Holdings confessed judgment against Appellant **by filing a complaint** that substantially complied with Rule 2952. The fact that the warrant of attorney included in the Guaranty inaccurately stated that the lender could confess judgment without a complaint did not negate the fact that Ogontz Holding did, in fact, file a complaint consistent with the Rule 2951(a) mandate. Appellant's attempt to conflate the issues regarding the text of the Guaranty and the content of the complaint is unpersuasive. Stated plainly, as Ogontz Holdings complied with Rule 2951(a), Appellant's assertion regarding the language in the warrant of attorney does not illustrate a defect in the record.

The second technicality that Appellant invokes relates to the Rule 2952(a)(3) requirement that the complaint affirm "that judgment is not being entered by confession against a natural person in connection with a consumer credit transaction." In short, the portion of Ogontz Holdings's complaint that complied with this aspect of the rule omitted the phrase "against a natural person." In actuality, it advised that judgment was "not being entered in connection with a consumer credit transaction." Complaint in Confession of Judgment, 3/21/16, unnumbered at 4. While Appellant appears to recognize that the variance in phrasing was *de minimis*, he

- 12 -

argues that, since the complaint is required to be construed strictly against the party to be benefited, it was necessarily defective. We disagree.

First, the underpinnings of Appellant's argument are faulty. Contrary to Appellant's contention, the trial court was not required to construe Ogontz's complaint strictly. Rather, "the validity of a judgment entered by confession rests upon a strict construction of the language of the warrant of attorney." *PNC Bank*, *Nat. Ass'n v. Bluestream Technology, Inc.*, 14 A.3d 831, 843 (Pa.Super. 2010). Thus, while the complaint and warrant of attorney must be read together to determine the authority to confess judgment, the strict construction of the operative language relates expressly to the warrant of attorney. *Id*. Indeed, the pertinent rules governing the initiation of confessed judgments and the content of the predicate complaint provide for **substantial compliance** with the form of complaints. *See* Pa.R.C.P. 2951 and 2952.

Moreover, Appellant's claim is unreservedly meritless. The purpose of the Rule 2952(a)(3) requirement is to ensure that the debt was not incurred in connection with a consumer credit transaction, which our jurisprudence recognizes as unsuitable for the confession of judgment. *See* Rule 2952 Explanatory Cmt.—1996. Thus, notwithstanding Appellant's preoccupation with the rule's reference to "a natural person," the important facts are: (1) this case does not involve a consumer credit transaction; and (2) the complaint for confessed judgment clearly states as much. As the Rule

2952(a)(3) reference to a natural person was inconsequential in this case, the omission is negligible. ***See*** Pa.R.C.P. 2951(a) (requiring substantial compliance with Rule 2952); ***Lechowicz v. Moser***, 164 A.3d 1271 (Pa.Super. 2017) (record self-sustaining where affidavit attached to complaint attested debt incurred was not result of consumer credit transaction).

Next, Appellant argues that the confessed judgment was defective because the notices of loan default were addressed to Phili Equities rather than Appellant, and those notices did not reference the Guaranty. Without citing any legal authority or contract provision to support his position, Appellant suggests that his personal liability under the Guaranty was dependent upon receiving individualized, formal notice of the loan default. The reason for Appellant's empty posturing is clear; however, support does not exist for that proposition. Ogontz Holdings issued notices to Phili Equities, the party in default of the loan, and more importantly it provided notice to the attorney who represented the corporation's legal interest, as required by the Note and the other loan documents. Stated another way, Appellant was not the party in default, and as guarantor, Appellant's responsibility was limited to answering for the payment of Phili Equities's debt under the loan documents. As neither statute, case law, nor contract obligated Ogontz Holdings to issue a separate notice of default to Appellant

personally as the guarantor, his protestations to the contrary are unpersuasive.

The penultimate basis that Appellant provides for striking the confession of judgment challenges the late charges and attorney fees included in the complaint for confession of judgment. Notably, Appellant does not complain that the charges were unauthorized under the loan documents. Instead, he contends that the confessed judgment is tantamount to an unenforceable penalty because the late charge, default interest rate, and attorney's fees requested in the complaint were excessive. Specifically, Appellant opines, the "late charge, continuing default interest at the rate of twelve (12%) percent per annum and [attorney's fees calculated at] five percent (5%) of the principal sum . . . is an unenforceable penalty and should have been stricken." Appellant's brief at 22.

In its entirety, Appellant's argument on this point consists of the preceding conclusory assertion and a block quote that recounts settled Pennsylvania jurisprudence which proscribes penal objectives in stipulated damages clauses. Appellant neglects to include any discussion supporting his bare assertion that the charges were punitive. As discussed below, his misstep is fatal.

Appellant's statement of the law is correct insofar as, "[w]here a stipulated damages clause is intended as a form of punishment [designed] to secure compliance" with a contract, it is unenforceable. ***See Holt's Cigar***

*Co.*, *222 Liberty Associates*, 591 A.2d 743, 747-48 (Pa.Super. 1991). However, this principle is not in dispute. The material question, which Appellant declines to confront directly, is whether the terms in the loan documents are impermissibly punitive. As we highlight *infra*, they are not.

Appellant failed to establish that the fees outlined in the Note and Guaranty are punitive. Instantly, the negotiated Guaranty provides that Appellant unconditionally guarantees to pay all sums due under the Note, including legal fees incurred in the confession of judgment. Specifically, in outlining the authority to confess judgment following default, the Guaranty established "an attorney's commission of the greater of five percent (5%) of such principal and interest or $2,000.00" Guaranty and Surety Agreement, 2/25/15, at 5. Likewise, the Note stated that a five percent late charge would be calculated based upon the amount in default:

> [Phili Equities] also promises to pay a late payment charge of five cents ($.05) for each dollar ($1.00) of each payment that is made more than fifteen (15) days after the due date thereof, which charge shall be due and payable with each such late payment.

Loan Note, 2/25/15, at 1.

These provisions are not tantamount to a penalty. In actuality, the foregoing fees amount to the parties' reasonable anticipation of the losses Ogontz Holdings would incur suffer as a result of Phili Equities's breach and lagging payment of its outstanding debt. Moreover, the collection of five percent fee and attorney's commission in the event of a default is

reasonable. Indeed, even when the fees are combined, the resulting one-time assessment of ten percent of the outstanding balance is facially reasonable. This Court has routinely determined that warrant-of-attorney clauses that exceed the amount at issue herein were enforceable. *See e.g.*, *Rait Partnership, L.P. v. E Pointe Properties I, Ltd.*, 957 A.2d 1275, 1279 (Pa.Super. 2008) (upholding fifteen percent attorney's commission); *Dollar Bank, Federal Sav. Bank v. Northwood Cheese Co., Inc.*, 637 A.2d 309, 314 (Pa.Super. 1994) (fifteen percent attorney's commission was reasonable). In fact, as it relates to Appellant's paltry argument herein, the *Dollar Bank* Court held that a bare allegation of excessiveness was meritless where, as here, the attorney's fees are specifically authorized by the warrant of attorney. *Cf. Lechowicz*, *supra* at 1277 (bald assertion of unreasonable legal fee is unavailing).

Similarly, since the loan documents provide a corrective measure for the overpayment of interest, the twelve percent default interest rate is not a valid basis to strike the confessed judgment, even if it were deemed excessive. Indeed, the Note which incorporates the "Default Rate" specifically states, "Should [lender] receive any payment of interest which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been and shall be deemed to have been, made in error and shall thereupon be applied to reduce the principal balance outstanding on this Note." Loan Note, *supra* at 2. Hence, to the

- 17 -

extent that the late fees can be viewed as excessive, the loan documents set forth that the charges shall be applied to the principal balance. Thus, even if we embraced Appellant's characterization of the default interest rate as disproportionate, which we do not, Appellant's remedy would be to have the excess amounts applied to the principal. Again, although that scenario might justify opening a confessed judgement, it is not a patent irregularity on the face of the documents that would warrant striking it. *See Resolution Trust Corp.*, *supra*. Accordingly, we find that Appellant's assertions that the confessed judgment must be stricken because the agreed upon fees and interest are usurios is misplaced.[2]

Finally, Appellant argues that the trial court erred in failing to strike the confessed judgment because the underlying complaint did not provide an itemized computation of the fees and interest due to Ogontz Holdings under the warrant of attorney. The crux of this claim is that the complaint for confessed judgment neglected to alleged how the amount was calculated. Again, no relief is due.

The certified record belies Appellant's contention that the complaint neglected to provide an itemized calculation of the total amount due. Our

---

[2] Appellant does not invoke a corresponding argument as a basis to open the judgment.

review of the pleading confirms that Ogontz Holdings specifically asserted that it was entitled to

| | | |
|---|---|---|
| a. | Principal | $320,000.00 |
| b. | Late charge | 16, 000.00 |
| c. | Attorney's Commission @ 5% | 16, 000.00 |
| | TOTAL | $352,000.00 |

Complaint in Confession of Judgment, 3/21/16, unnumbered at 3. Apparently conceding that Ogontz Holdings provided the foregoing illustration in the complaint, Appellant complains that the itemization "was woefully inadequate" because it does not "state how the late charges are calculated and under what authority" they are imposed. Appellant's brief at 23. Again, we disagree.

First and foremost, the procedural dictates that govern the confession of money judgments do not require the level of specificity in a complaint that Appellant suggests. Pursuant to Pa.R.C.P. 2952, the complaint must include, *inter alia*, "an itemized computation of the amount then due . . ., which may include interest and attorneys' fees authorized by the instrument[.]" Rule 2952(a)(7). That is precisely what Ogontz Holdings provided herein. In addition to the itemized calculation outlined *supra*, the complaint also identified the Note and Guaranty as the authorizing instruments. **See** Complaint in Confession of Judgment, 3/21/16, unnumbered at 2, 3. Contrary to Appellant's protestations, Rule 2952 simply does not direct that a plaintiff illustrate the underlying computation of the fees, *i.e.*, show its

work, and we are unwilling to attach an additional component the rule did not require. Appellant's argument is baseless.

For all the foregoing reasons, Appellant failed to establish any defects on the face of the record that would warrant striking the confessed judgment entered against him. As the certified record in support of the judgment was self-sustaining, we will not disturb the trial court's order denying Appellants petition to strike the confessed judgment. **See Resolution Trust Corp.**, **supra** at 273.

The next portion of Appellant's arguments relate to his petition to open the confessed judgment. Again, we review the trial court's determination for an abuse of discretion, and absent said error, we will sustain the trial court's decision. **Id**.; **First Union Nat. Bank**, **supra** at 1227. A confessed judgment should be opened if the respondent submits evidence that would require an issue to be submitted to a fact-finder. Pa.R.C.P. 2959(e). To prevail on his petition to open a judgment, Appellant must demonstrate: "(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense[.]" **Green Acres Rehabilitation and Nursing Center v. Sullivan**, 113 A.3d 1261

(Pa.Super. 2015) (quoting (**Mother's Restaurant, Inc. v. Krystkiewicz**, 861 A.2d 327, 336 (Pa.Super. 2004) (*en banc* )).[3]

Appellant asserts four claims of trial court error in relation to the court's decision to deny the motion to open the confessed judgment. They all relate to the court's determination that Appellant failed to establish a meritorious defense that warranted opening the judgment. First, he argues that the underlying warrant of attorney was procured by fraud. Then, Appellant claims that he did not execute the warrant of attorney knowingly, voluntarily, or intelligently. Next, Appellant invokes principles of equitable estoppel. Finally, he claims that the trial court disregarded an issue of fact regarding the fair market value of the properties he purchased.

We address the cruces of Appellant's first two arguments collectively. His position is that the warranty of confession was obtained fraudulently, in part because he did not read the warrant of attorney or understand the loan documents. Appellant's brief at 26. He also claims that he believed that the agreement with Ogontz Holdings was governed by *Heter Iska*, a Jewish

_____

[3] In **Lechowicz**, **supra** at 1274-75, we clarified that the determination of whether the petition to strike or open a confession of judgment was filed promptly is gauged in relation to the date that plaintiff filed the notice of execution upon the judgment by confession, and not the preceding date that the prothonotary issued notice of the confessed judgment pursuant to Rule 236. As Appellant filed his petition to strike or open the confessed judgment before Ogontz Holdings sought execution, the variance between the two dates is irrelevant herein.

religious arrangement, which Appellant describes as "a joint venture where each party owes the other a fiduciary duty of honesty and good faith." Petition to Strike/Open Confessed Judgment, 5/19/16, at 2; Appellant's brief at 26-27. As a related component of this argument, Appellant contends that Ogontz Holdings fraudulently induced the agreement by misrepresenting that the properties were a profitable investment and omitted that it "managed and/or controlled most of the tenants[.]" Appellant's brief at 27. In sum, Appellant opines that, in light of the *Heter Iska* and the alleged fraudulent inducement, his failure to read the loan documents did not preclude him from asserting that the Guaranty and warrant of attorney were voidable. For the following reasons, we disagree.

In rejecting Appellant's fraud-based claims, the trial court concluded that Appellant failed to establish the existence of a fiduciary duty or any special relationship under the purported *Heter Iska* that would supersede the arms-length agreement outlined in the loan contract documents. Indeed, Appellant was represented by counsel in the transaction and exercised equal bargaining power. Tellingly, notwithstanding his protestations to the contrary, the record is devoid of any evidence that would buoy Appellant's assertion of *Heter Iska* except his self-serving averments, which the trial court roundly rejected. Accordingly, we sustain the trial court determination that Appellant's failure to read the pertinent documents was fatal.

It is axiomatic that the failure to read a document is not a basis to avoid its consequences. ***Standard Venetian Blind v. American Empire Insurance***, 469 A.2d 563, 566 (Pa. 1983); ***Pittsburgh National Bank v. Larson***, 507 A.2d 867, 869 (Pa.Super. 1986) ("The failure to read a contract is certainly an unavailing defense and will not justify an avoidance of the contract."). In ***Dollar Bank***, ***supra***, at 313 (citation omitted) the Superior Court held that "The failure to read a confession of judgment clause will not justify avoidance of it. This is particularly true where the confession of judgment clause is clear and conspicuous and part of a commercial transaction." As the certified record in the case at bar confirms that the warrant of attorney clause in the Guaranty was both clear and conspicuous and invoked as part of a commercial transaction, we can discern no basis to disturb it.

Next, we address Appellant's claim of fraudulent inducement based upon alleged misrepresentations of the properties' potential for producing income. He contends that Ogontz Holdings's oral representations were material to Phili Equities's decision to purchase the properties and his desire to execute the Guaranty that facilitated the deal. Ogontz Holdings counters that Appellant's claim of fraudulent inducement is baseless in light of the integration clauses in the loan documents, which effectively bar the introduction of parol evidence. We agree.

Initially, we note that the sales agreement that facilitated the purchase included a recital wherein Appellant, acting as the principal of Phili Equities, confirmed that he was a "sophisticated investor, knowledgeable and experienced in the acquisition and operation of commercial buildings" and that he "evaluated the merits and risks of making an investment in the propert[ies], and had determined that such an investment is suitable[.]" Agreement of Sale ¶9.1, at 6-7. Moreover, Appellant acknowledged that he had an opportunity to inspect the properties and that Phili Equities "is not purchasing the Propert[ies] in reliance upon any oral or written representation, warranty, agreement or condition made or agreed to by Seller." *Id*. at 7. Hence, the recitals that Appellant adopted in the sales agreement contradict his current assertion that he relied upon outside assurances provided by Ogontz Holdings in deciding to purchase the subject properties.

More importantly, the sales agreement, Note, and Guaranty which Appellant executed, either personally or as the principal of the corporate entity, each has a separate integration clause that limits the scope of the pertinent agreements to the written documents. Specifically, as it relates to the Guaranty that forms the basis of Appellant's personal liability that is at issue in this appeal, that document provided: "This Guaranty contains the entire agreement of the parties with respect to the subject matter hereof

- 24 -

and supersedes all prior oral or written agreements or statements related to the subject matter[.]" Guaranty and Surety Agreement ¶20, at 6.

It is axiomatic that "where the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract." *Youndt v. First National Bank*, 868 A.2d 539, 546 (Pa.Super. 2005). Indeed, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previously oral or written negotiations or agreements involving the same subject matters as the contract is almost always inadmissible to explain or vary the terms of the contract." *Id*. Moreover, Appellant's allegations of fraud in the inducement are insufficient to overcome the application of the parol evidence rule. *McGuire v. Schneider, Inc.*, 534 A.2d 115, 117 (Pa.Super. 1987) (parol evidence rule is particularly applicable where agreement contains integration clause). As the integration clause and parol evidence rule precluded Appellant from introducing any evidence to support his claim of fraud in the inducement, we sustain the court's refusal to open the judgment on that basis.[4]

_____

[4] Appellant's reliance upon *PNC Bank, Nat. Ass'n v. Bluestream Technology, Inc.*, 14 A.3d 831 (Pa.Super. 2010), for the proposition that
*(Footnote Continued Next Page)*

Similarly, we reject Appellant's claim that he did not knowingly execute the warrant of attorney. This contention is premised upon Appellant's assertion that he is foreign born and was not educated in English, and that he neglected to read the Guaranty or any of the documents that he signed. Relying upon our holding in ***Egyptian Sands Real Estate, Inc. v. Polony***, 294 A.2d 799 (Pa.Super. 1972), he argues that the warrant of attorney required a clear manifestation of assent, which he asserts was absent herein. Appellant contends that he is in a similar situation to the appellants in ***Egyptian Sands***, in that he, like those lessees, is a foreign-born businessman with limited knowledge of English and who executed a commercial agreement without first reading the confession of judgment clause. In essence, Appellant equates his circumstances to "a blind child [who] relied completely on [Ogontz Holdings representations]." Appellant's brief at 29.

Appellant's invocation of our holding in ***Egyptian Sands Real Estate***, is misplaced. While it is accurate that the appellants in both cases were

*(Footnote Continued)* _____

evidence of misrepresentation was admissible, is misplaced because the agreements in that case did not include integration clauses. Thus, the parol evidence rule simply did not apply therein. ***Id***. at 842. Moreover, although "[o]ne exception to th[e] general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake[,]" Appellant does not invoke any of these bases herein. As noted, *supra*, Appellant expressly invoked fraud in the inducement, which may not be supported by parol evidence. ***Id***.

- 26 -

foreign-born parties with limited English skills who neglected to read cognovit clauses in the governing agreements, the case at bar does not highlight the patent lack of consent that was evident in **Egyptian Sands Real Estate**. Indeed, in invoking our holding in that case, Appellant ignores the most salient aspects of our analysis, *i.e.*, the lessor's manipulation, the lessees' lack of legal representation during the transaction, and the lessees' reliance upon the lessor's attorney. We reasoned,

> In the present case, the defendants did not read the confession of judgment provision in the lease. Instead, they relied upon the plaintiff's attorney for guidance, having been dissuaded by the plaintiff from procuring outside counsel. The attorney did not mention the cognovit provision, and in retrospect thought that he had represented the plaintiff alone. Without intending in the slightest to suggest any impropriety on the part of the attorney, we do not feel that the circumstances of this case suggest the clear consent necessary to sustain a confession of judgment clause.

*Id*. at 323-24.

Appellant was represented by his own counsel during the underlying negotiations, and he does not allege that Ogontz Holdings discouraged him from either reading the pertinent documents or relying upon his counsel's legal advice. Unlike the scenario in **Egyptian Sands**, Appellant's failure to read the cognovit clause was not a basis to open the judgment.

Appellant's next argument is that Ogontz Holdings was equitably estopped from confessing judgment because Appellant relied upon its alleged misrepresentation of the properties' income potential. We reject this

claim for the same reason we rebuffed Appellant's primary argument concerning his petition to open. Specifically, the failure to read a document is not a basis to avoid its consequences, Appellant failed to establish the existence of the *Heter Iska*, fiduciary duty, or any special relationship, and Appellant's claims of fraudulent inducement are baseless in light of the integration clauses and the application of the parol evidence rule. No relief is due.

Finally, Appellant argues that the trial court erred in disregarding a material issue of fact relating to the amount of Phili Equities's total debt under the loan documents. This assertion resurrects the previous complaints regarding Ogontz Holdings's representation of the properties' value. He asserts that Ogontz Holdings represented that the properties had a fair market value of $1,400,000; "[h]owever, an appraisal a mere six (6) months later revealed that the fair market value of the . . . properties was substantially less than that." Appellant's brief at 30. He continues with the conclusory assertion, with no citation to relevant legal authority, that "equity demands that the value of the Note, and any liability under the Guaranty, be reduced *pro rata* in accordance with the accurate fair market value of the . . . properties." **Id**. This claim fails.

First, Appellant waived his contentions by omitting citation to pertinent legal authority to support this bare assertion of trial court error. **See** Pa.R.A.P. 2119(a). As we observed in **In re Estate of Whitley**, 50 A.3d

203, 209 (Pa.Super. 2012), Rule 2119(a) mandates that any legal point must be "followed by such discussion and citation of authorities as are deemed pertinent." As we have previously concluded, "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority[,] . . . [and the] [f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal." *Id*. at 209-201 (citations omitted).

Moreover, assuming arguendo that the claim was properly presented, it is patently baseless. The instant assertion presupposes the existence of relevant admissible evidence to support Appellant's allegations of misrepresentation. However, as Ogontz Holdings accurately observes, the purported evidence that Appellant attempts to invoke concerning (1) the properties' value; (2) the existence of *Heter Iska*; (3) the status of tenants and leases when the agreements were executed; and (4) his own failure to read the cognovit clause are either barred by the parol evidence rule, irrelevant, or legally insufficient to warrant opening the judgment. Thus, Appellant's argument is unpersuasive.

As Appellant failed to establish any basis to strike or open the judgment of confession, we do not disturb the trial court order denying Appellant's petition for relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/14/18</u>